IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 05-cv-02328-WDM

VIOLETTE PATTERSON,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Miller, J.

Claimant Violette Patterson (Patterson) appeals a final administrative decision by Defendant Jo Anne B. Barnhart (the Commissioner) finding that she is not disabled within the meaning of the Social Security Act, and is therefore not entitled to widow's benefits.

Background

Patterson was born in 1947. She has a high school education, but has no past relevant work activity. Although she has occasionally worked as a housekeeper, her earnings never rose to the point they could be considered substantial gainful activity.

1.    Medical History

Since her 2001 application, at least seven different physicians have examined Patterson. These physicians generally agree that Patterson does not suffer from any significant physical impairments, but that she does suffer from severe depression and post-traumatic stress disorder (PTSD). In addition, these mental health issues caused at least three physicians to conclude that Patterson is moderately limited in her ability to

maintain concentration, persistence, and pace.

2.    Procedural History

On August 21, 2001, Patterson submitted an application to the Social Security Administration for disability insurance benefits claiming she that she was disabled. After this application was denied on initial review, she requested and received a hearing before an Administrative Law Judge (ALJ) on April 9, 2003. Following this hearing, the ALJ issued a decision finding that although Patterson suffers from severe depression and PTSD, she is not disabled because she is able to perform unskilled labor at all exertional levels, allowing her to find work in a great number of jobs.

On July 8, 2004, however, the Social Security Appeals Council reversed and remanded this decision. Specifically, the Appeals Council directed the ALJ to (1) reconsider whether Patterson's limitations in maintaining social functioning, concentration, persistence and pace should be included in her residual functional capacity (RFC); (2) provide rationale for rejecting physician opinion evidence, and (3) specifically identify the jobs that the ALJ believes that Patterson could perform.

On remand, the ALJ conducted another hearing, and again found that Patterson is not disabled. In response to the Appeals Council's remand order, the ALJ made very limited changes, and at times even expresses confusion over why further explanation of his decision was necessary. But despite the ALJ's minimal changes, the Appeals Council declined review of the ALJ's second decision, making it the final decision of the Commissioner for review in this court.

## Standard of Review

I review the Commissioner's decision to determine whether her factual findings are

supported by substantial evidence in the record as a whole and whether she applied the correct legal standards.  *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The commissioner must apply the correct legal standard, and must provide the court with a sufficient basis to determine that appropriate legal principles were followed.  *Nielson v. Sullivan*, 992 F.2d 1118, 1119-1120 (10th Cir. 1993).

## Discussion

The Secretary has established a five-step evaluation process to determine whether a claimant is disabled for purposes of the Social Security Act.  *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing [her] past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

1.  <u>Summary of the ALJ's opinion</u>

The determinative step of the five-step process in this case was step five.  After quickly moving through step one, the ALJ determined in step two that Patterson's depression and PTSD represent severe impairments.  But, in step three, after a detailed discussion, the ALJ found that Patterson did not meet the criteria in the listings for either of these impairments.  In step four, the ALJ determined Patterson's RFC allowed her to perform work at all exertional levels, so long as it is unskilled work or work that does not

take more than thirty days to learn. Then, since Patterson has no past relevant work activity, the ALJ moved on to step five, where he finally determined that Patterson could find work at jobs such as a charge account clerk, counter clerk, or construction flagger.

2.  Evaluation of Opinions from Examining Physicians

Patterson argues that remand is required because the ALJ failed to demonstrate proper consideration of several physicians' opinions. I agree.

The Social Security Administration has developed a very structured analytical framework that an ALJ must follow when determining how much weight to give to any medical opinion. First, the ALJ must decide whether the opinion comes from a treating source. A treating source is either a physician or a psychologist who has an ongoing treatment relationship with the applicant. 20 C.F.R. § 404.1502. If so, then ALJ must determine whether the opinion is entitled to controlling weight. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The Tenth Circuit has explicitly described how an ALJ must analyze a treating doctor's opinion:

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight. The agency ruling contemplates that the ALJ will make a finding as to whether a treating source opinion is entitled to controlling weight.

*Id.* Even if a treating source opinion is not entitled to controlling weight, an ALJ cannot simply reject the opinion; it is still entitled to deference. *Id.* In order to determine how much deference, the ALJ must consider all of the following six factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the

treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1300-01; *see also* 20 C.F.R. §§ 404.1527(d)(2)-(6) & 416.927(d)(1)-(6)).

The ALJ's decision must always demonstrate consideration of the proper factors, *Robinson v. Barnhart*, 366 F.3d 1078 (10th Cir. 2004) (remanding because the ALJ's opinion failed to demonstrate that he considered the proper factors in determining what weight to give to a physician's opinion); *Nielson v. Sullivan*, 992 F.2d 1118, 1119-1120 (10th Cir. 1993) (noting that meaningful review requires that the ALJ articulate the basis for his decision with sufficient detail to allow a reviewing court to determine that he followed the appropriate legal principles); *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) ("Where the record on appeal is unclear as to whether the ALJ applied the appropriate standard . . . the proper remedy is reversal and remand."). Moreover, the ALJ must also be sufficiently specific to make it clear to any subsequent reviewers what weight the ALJ gave to the treating source opinions and the reasons for that weight. *Watkins*, 350 F.3d at 1300. If the ALJ rejects the treating source opinion completely, he must give "specific, legitimate reasons" for doing so. *Id.*

    a.    <u>Dr. Rodriguez</u>

First, Patterson points to multiple opinions from Dr. Carlos Rodriguez, a licensed psychologist. The first of these came in August 21, 2001, when Dr. Rodriguez examined Patterson and prepared a report diagnosing Patterson with PTSD, major depression, and

substance abuse. (Admin. R. at 172-74) In addition, he assessed her Global Assessment Functioning (GAF) at 45.[1] Then on April 17, 2004, Dr. Rodriguez examined Patterson and filled out a Colorado Department of Health and Human Services form, concluding that Patterson was disabled and that her disability was expected to last more than twelve months. (Admin. R. at 253-54) Finally, on May 18, 2005, Dr. Rodriguez filled out a social security form, concluding that marked limitations in most work-related mental categories. (Admin. R. at 255-56)

In response, the Commissioner argues that various comments from the ALJ's opinion could possibly be read to indicate that the ALJ actually did consider all of the proper factors and merely failed to say that he did so. This argument however, demonstrates a fundamental misunderstanding of the proper standard of review. The proper question is not whether it is *possible* that the ALJ considered all of the proper factors. Rather, the question is whether the ALJ has *demonstrated* that he has done so.

As to the Commissioner's argument that the ALJ is not required to mechanically discuss each and every factor when considering medical opinions, I agree that a detailed discussion of each factor is not required, but again, Tenth Circuit precedent is clear that the ALJ must *demonstrate* consideration of all of the proper factors. When this standard is properly understood, it is not overly burdensome to acknowledge the factors listed in 20 C.F.R. § 1527(d) and provide some discussion of at least a few of the most determinative factors.

---

[1] A GAF is the physician's subjective judgment of the patient's overall level of functioning. *Langley v. Barnhart*, 373 F.3d at 1122, n.3 (10th Cir. 2004). GAF's are based on a scale from 1 to 100, and a score of 41 to 50 indicates "serious symptoms or serious impairment in social, occupational, or school functioning, such as inability to keep a job." *Id.* (internal quotations omitted).

6

In this case, the ALJ never claims to have considered all of the factors from 20 C.F.R. § 1527(d), and his discussion of Dr. Rodriguez's opinions fails to demonstrate that he did. In particular, the ALJ failed to demonstrate consideration of the length,[2] nature and extent of the treatment relationship, and fails to discuss the kinds examinations or tests performed. He also failed to explain why the opinion is inconsistent with the record as a whole, or whether Dr. Rodriguez is an expert in PTSD or depression. Therefore, I must remand for reconsideration of Dr. Rodriguez's opinions.

    b.    Dr. Valette

Patterson also argues that the ALJ erred with respect to an opinion from Dr. Brett Valette, an examining psychologist retained by the Commissioner. Dr. Valette assessed Patterson's GAF at 50, which like Dr. Rodriguez's assessment of 45, would indicate "serious symptoms or serious impairment in social, occupational, or school functioning, such as inability to keep a job." *Langley,* 373 F.3d at 1122, n.3 (internal quotations omitted). According to Patterson, the ALJ failed to properly weigh this "opinion" before he rejected it. In response, the Commissioner argues that the ALJ did not reject Dr. Valette's opinion at all — he accepted it.

Patterson thus raises the question of whether a GAF score, by itself is a clear enough "opinion" such that the ALJ would be required to consider all of the factors listed in 20 C.F.R. § 1527(d). It appears that the Tenth Circuit has never addressed this issue in a published opinion, but in at least two unpublished decisions, it has indicated that a

---

[2] Although the ALJ mentioned that Patterson sees Dr. Rodriguez only once a year, he does not indicate how many years this has gone on. From the administrative record, it appears that Dr. Rodriguez has examined Patterson at least three times, which appears to be more than any other physician involved in this case.

7

GAF score such as this would not require such an analysis. *See Eden v. Barnhart*, 109 F. App'x 311, 314 (10th Cir. 2004) (emphasizing that a GAF score of 45 could indicate either "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning.") (internal quotations omitted) (emphasis in original); *Zachary v. Barnhart*, 94 F. App'x 817, 819 (10th Cir. 2004) (same). In this case, however, I need not decide this issue since remand is required based upon the ALJ's treatment of other medical opinions. And upon remand as the ALJ is reconsidering these other medical opinions, the ALJ should, of course, fully consider how the combination of all of the medical evidence — including Dr. Valette's GAF score — affects his findings.

  c.  <u>The State Agency Physicians</u>

Patterson also argues that the ALJ erred regarding two state agency physicians.[3] Dr. Zinnick concluded that Patterson had moderate difficulties in maintaining social functioning and stated that she "[c]annot work closely with supervisors or coworkers." (Admin. R. at 193; 197-99) In addition, Dr. Zinnick concluded that she had moderate limitations in maintaining concentration, persistence and pace. *Id.* Dr. Ryan's conclusions were similar regarding concentration, persistence and pace, but she found no significant limitations regarding social interaction. (Admin. R. at 228-30; 242)

The ALJ's discussion of these physicians' opinions is somewhat confusing. He never refers to the physicians by name, and only refers to a single state agency

---

[3] It is not clear whether these physicians were psychologists or psychiatrists. The ALJ rafters to only one of them, using the psychologist label. Patterson's brief, however, calls them psychiatrists. And, Dr. Zinnick used the designation M.D. after his/her signature, while Dr. Ryan's report contains no indication as to her credentials.

8

psychologist. It is clear, however, that the ALJ rejected Dr. Zinnick's opinion regarding social functioning. (Admin. R. at 19) In addition, the ALJ appears to have rejected both of the physicians' conclusions regarding persistence and pace, even though he expressly adopts their conclusions regarding concentration. It is possible that the ALJ simply meant to use the word "concentration" as a shorthand for "concentration, persistence and pace," but this is not necessarily so. In any event, it is clear that the ALJ has failed to demonstrate that he considered all of the proper factors when reviewing these opinions. Thus, for substantially the same reasons given above regarding Dr. Rodriguez's opinions, I must remand for reconsideration of Dr. Zinnick and Dr. Ryan's opinions.

      d.     <u>Dr. Madsen</u>

Finally, Patterson argues that the ALJ erred by improperly weighing an opinion from Dr. Richard B. Madsen, who concluded that Patterson's ability to do work-related activities were impaired and she would have "difficulty maintaining a regular work schedule and maintaining her focus and concentration at work." (Admin. R. at 227) Patterson does not explain, however, and I cannot see, how this opinion conflicts with the ALJ's finding that she had moderate limitations in her ability to maintain concentration. But as with Dr. Valette's GAF score discussed above, upon remand the ALJ should consider how all of Dr. Madsen's opinions impact his reconsidered findings.

### 3.    <u>The ALJ's RFC Finding</u>

Finally, Patterson argues that there is not substantial evidence supporting the ALJ's RFC determination. The ALJ concluded that Patterson had no significant physical limitations, and could perform unskilled work or work that required no longer than thirty

days to learn.  (Admin. R. at 22)  Patterson does not dispute the ALJ's findings regarding physical limitations, but she argues that the ALJ erred by concluding, without citing any supporting evidence, that moderate limitations in maintaining concentration would allow Patterson to perform any unskilled work or work that required no longer than thirty days to learn.  According to Patterson, the ALJ cannot draw this conclusion based upon his own reasoning, but rather must rely upon evidence from a physician or vocational expert.  In response, the Commissioner argues that such a conclusion is within the ALJ's province as the ultimate decision-maker regarding RFC.

However, since the ALJ's reconsideration of the medical evidence in this case will likely necessitate a reevaluation of Patterson's RFC, I need not decide this issue at this time.  I suggest that since a layperson would not necessarily know whether a moderate limitation in the ability to concentrate would allow a person to perform any unskilled job, the ALJ's reasoning ought to be supported by some type of expert evidence, preferably from a physician or vocational expert.  This is especially so since an ALJ is generally not allowed to rely upon his own lay opinion when it comes to matters requiring special expertise.  *See Langley*, 373 F.3d at 1121 ("[A]n ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*") (emphasis in original).

## Conclusion

Based upon my review of the record in this case, I find that the ALJ failed to demonstrate that he considered all of the proper factors regarding Dr. Rodriguez, Dr.

Ryan, and Dr. Dr. Zinnick's opinions.  Accordingly, the determination that Patterson is not disabled is reversed and this matter is remanded for proceedings consistent with this opinion.

DATED at Denver, Colorado, on March 23, 2007.

                                                BY THE COURT:

                                                s/ Walker D. Miller
                                                United States District Judge